

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/22/2009

| | | |
|---|---|---|
| In re: | § § | |
| LAS TORRES DEVELOPMENT, L.L.C., | § § § § | CASE NO. 09-33872-H4-11 |
| and | § § | |
| LA PLACITA SHOPPING CENTER, L.L.C., | § § § | CASE NO. 09-33885-H4-11 |
| Debtors. | § § | Chapter 11 |

**MEMORANDUM OPINION ON DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL**
[Docket No. 6]

### I. INTRODUCTION

The debtors in the above-referenced, jointly administered Chapter 11 case request permission to use the cash collateral of one of the debtors—consisting solely of rental income—to pay both debtors' continuing obligations during the pendency of their bankruptcy cases pursuant to 11 U.S.C. § 363. A secured creditor has objected to these debtors' request on the grounds that its loan documents provide for an absolute assignment, rather than a collateral assignment, of the rents. Based on this premise, the secured creditor contends that the rents are not property of the estate, and that therefore this Court may not properly authorize the debtors to use the rents pursuant to § 363.

The sole issue addressed in this Memorandum Opinion is whether the assignment of the rental income in the case at bar constitutes a collateral assignment, leaving fee in the debtors

with the lender retaining a security interest, or an absolute assignment, transferring fee to the lender upon the debtor's default.[1] For the reasons set forth below, this Court concludes that the loan documents contemplate a collateral assignment of the rental income and that, therefore, the rental income constitutes cash collateral of the debtor generating the rents.

## II. FINDINGS OF FACT

1. On June 1, 2009 (the Petition Date), Las Torres Development, L.L.C. (Las Torres) and La Placita Shopping Center, L.L.C. (La Placita) (collectively, the Debtors) each filed voluntary Chapter 11 petitions, initiating the above-referenced Chapter 11 cases. These cases are being jointly administered, and the Debtors continue to operate as debtors-in-possession.

2. La Placita operates a shopping center (the Property), which generates approximately $47,000.00 per month in rental income (the Rents). Prior to the Petition Date, La Placita executed two separate promissory notes with MetroBank, N.A. (the Lender): one in the original face amount of $2,900,000.00, and the other in the original face amount of $300,000.00. Las Torres has also executed a promissory note with the Lender in the original face amount of $1,300,000.00. In addition to the approximately $4,500,000.00 loaned to the Debtors, the Debtors have guaranteed the outstanding obligations of their parent and affiliated entities (together, the Ramirez Companies). Contemporaneously with the promissory notes described above, La Placita and the Lender executed a "Deed of Trust and Security Agreement" (the Deed of Trust) and an "Absolute Assignment of Rents" (the Assignment) (collectively, the Documents).

---

[1] A corollary issue is whether, in two cases being jointly administered, cash collateral from one debtor's bankruptcy estate may be used to pay the expenses of the other debtor's estate. Specifically, may the attorney's fees of Las Torres be paid out of La Placita's cash collateral? The Court will address this issue in a separate memorandum opinion and order.

2

3. The Deed of Trust provides that "[t]o secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, [La Placita] has GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, and CONVEY, unto Trustee the Mortgaged Property." The "Mortgaged Property" securing the notes included "[t]he Land, Buildings, Fixtures, Personalty, Rents and Contracts." The Deed of Trust defines "the Rents" as "[a]ll of the rents, royalties, revenues, income, proceeds, profits and other benefits paid or payable by parties to the Leases other than Grantor for using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying the Mortgaged Property."

4. Section 9.1 of the Deed of Trust also contains the following language under the heading "Security Interest":

> This Deed of Trust shall be construed as a deed of trust on real property and it shall also constitute and serve as a "Security Agreement" on personal property within the meaning of, and shall constitute, until the grant of this Deed of Trust shall terminate as provided in Article 2 hereinabove, a first and prior security interest under, the Uniform Commercial Code (being Chapter 9 of the Texas Business and Commerce Code, as to property within the scope thereof and situated in the State of Texas) with respect to the Personalty, Fixtures, Leases and Rents. To this end, [La Placita] has GRANTED, BARGAINED, CONVEYED, ASSIGNED, TRANSFERRED and SET OVER, unto Beneficiary, a first and prior security interest in and to all of [La Placita's] right, title and interest in, to and under the Personalty, Fixtures, Leases and Rents (collectively the "Collateral"), to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

5. Section 7.1(h) of the Deed of Trust, entitled "Rights Relating to Rents," provides that La Placita "has, pursuant to the Assignment of Rents, assigned absolutely to [the Lender] all Rents under each of the Leases covering all or any portion of the Mortgaged Property."

6. The Assignment executed contemporaneously with the Deed of Trust provides that "[f]or and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable

3

consideration, the receipt and sufficiency of which are hereby acknowledged, [La Placita] does hereby absolutely assign, transfer, and set over to [the Lender] the Rents."

7. The Assignment also acknowledges the Deed of Trust in its definition section:

> ***Security Documents*** means the following documents of even date herewith: the [Deed of Trust] executed by [La Placita], as "Grantor," to the Trustee therein designated for the benefit of [the Lender], as "Beneficiary," creating a lien on the Property and containing a power of sale, and including the collateral assignment of lease and the other documents executed in connection with the loan evidenced by the Note and Security Agreement. This Assignment does not constitute one of the Security Documents in view of the fact that this Assignment provides for an absolute assignment of Rents, not a collateral assignment of Rents.

8. Section 2.1 of the Assignment contains the following language:

> This Assignment is absolute, unconditional and immediately effective. This Assignment does not collaterally transfer the Rents to [the Lender] and does not grant [the Lender] a lien on the Rents; instead, this Assignment absolutely vests title to the Rents in [the Lender] and constitutes [the Lender] as the owner of the Rents in accordance with the terms and provisions of this Assignment. It shall never be necessary for [the Lender] to initiate legal proceedings of any kind to enforce the provisions of this Assignment.

9. Section 4.1 of the Assignment provides that "[s]o long as there exists no Event of Default [as that term is defined in the Deed of Trust], [La Placita] shall have and is hereby granted the license (the "License") to receive and collect all of the Rents." Section 4.2 of the Assignment further provides that:

> All of the Rents so received or collected by [La Placita] pursuant to the License . . . shall constitute a trust fund held by [La Placita] for the benefit of [the Lender]; and the entirety of the Rents constituting such trust fund shall be utilized by [La Placita] for payment of the Indebtedness, for the timely payment of taxes and assessments on the Property before the accrual of any penalty or interest with respect thereto, for payment of premiums on insurance required under the Security Documents, for payment of the costs of maintenance and repairs with respect to the Property, for fulfillment of [La Placita's] other obligations under the Security Documents and for fulfillment of [La Placita's] obligation (as landlord) under the Leases, all of such previously stated obligations of [La Placita] to be fulfilled by [La Placita] (in such order of priority as [the lender] may from time to

time direct) prior to [La Placita's] utilization of the Rents for any other purpose whatsoever.

10. Section 4.3 of the Assignment provides that "[u]pon the occurrence of any Event of Default [as that term is defined in the Deed of Trust], the aforesaid License of [La Placita] under Section 4.1 of this Assignment shall, ipso facto, automatically terminate without the necessity that [the Lender] give [La Placita] any nature of notice or institute against [La Placita] any nature of legal proceedings or take any other action."

### III. PROCEDURAL BACKGROUND

11. On June 1, 2009, the Debtors filed an Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral (the Motion). [Docket No. 6.]

12. On June 5, 2009, the Lender filed a Response and Objection to the Motion (the Objection). [Docket No. 18.]

13. On June 18, 2009, the Debtors filed a Reply to the Objection (the Reply). [Docket No. 42.]

14. On June 19, 2009, the Lender filed a Response to the Reply (the Response). [Docket No. 44.]

15. On June 8, 2009, the Court held a hearing on the Motion, the Objection, the Reply, and the Response, which was continued on June 23, 2009. At this hearing, the Lender offered exhibits, which this Court admitted into evidence without objection. This Court also heard testimony from Gilberto Ramirez (Ramirez), the manager and 98% owner of both Debtors—the remaining 2% of the Debtors is owned by a partnership in which Ramirez is the general partner. Counsel for the Lender, citing the parole evidence rule, objected to Ramirez's

testimony as to the parties' intent when executing the Documents. Specifically, the Lender's counsel argued that the Documents are unambiguous and that any testimony regarding the parties' intent should be excluded. This Court overruled the objection based on its conclusion that the loan documents are ambiguous because the Documents contain conflicting provisions insofar as they purport to create both a security interest in the Rents and to make an absolute assignment of these Rents. Ramirez testified that at the time he signed the Documents, he did not intend to make an absolute assignment of the Rents, but rather to make the Rents collateral for the Debtors' loans with the Lender. At the conclusion of the hearing, the Court took under advisement one key issue—whether the Rents are, in fact, cash collateral; or whether there has been an absolute assignment of the Rents to the Lender such that the Rents are not property of the estate and, therefore, not cash collateral.

### IV. CONCLUSIONS OF LAW

**A.  Jurisdiction and Venue**

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This claim objection proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (M), and (O). Additionally, this contested matter is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not

specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.  Whether the Rents Constitute Cash Collateral**

Section 363(c)(2) of the Bankruptcy Code prohibits the trustee or the debtor-in-possession from using cash collateral unless (a) each entity with an interest in the cash collateral consents; or (b) the Court, after notice and a hearing, authorizes the use of the cash collateral. 11 U.S.C. § 363(c)(2). Section 363(a) of the Bankruptcy Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest," including "rents . . . or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest." 11 U.S.C. § 363(a).

Based on the above-quoted provisions, the Court may only authorize the Debtors to use the Rents if either of the Debtors' bankruptcy estates have "an interest" in the Rents. *See* 11 U.S.C. § 363(a). Specifically, this Court must determine whether La Placita's bankruptcy estate has an interest in the Rents because the Rents constitute payments made by tenants with respect to a shopping center wholly owned by La Placita. Because a debtor's property rights are determined by state law, this Court must look to Texas law to determine whether La Placita has any interest in the Rents. *Butner v. United States*, 440 U.S. 48, 55 (1979); *In re Allen*, 357 B.R. 103, 108 (Bankr. S.D. Tex. 2006).

Texas recognizes two distinct types of assignments of rents: a collateral assignment (which merely creates a security interest in rental income) and an absolute assignment (which vests fee title in the assignee). *Cadle Co. v. Collin Creek Phase II Ass'n*, 998 S.W.2d 718, 722

(Tex. App.—Texarkana 1999, no pet.). In short, a collateral assignment creates a security interest in the rents, whereas an absolute assignment operates as a present transfer of title to rents contingent upon the mortgagor's default. *FDIC v. Int'l Prop. Mgmt, Inc.*, 929 F.2d 1033, 1035 (5th Cir. 1991).

Whether the Rents at issue have been collaterally assigned, or absolutely assigned, to the Lender depends on the parties' intent, as evidenced by the plain language of its loan documents—in this case, the Deed of Trust and the Assignment. However, if the meaning of these documents cannot be ascertained from their plain language, this Court may then apply the applicable rules of contract construction and, if the document is still ambiguous after the application of these rules, the Court may look to extrinsic evidence to resolve the ambiguity. *Terrill v. Tuckness*, 985 S.W.2d 97, 102 (Tex. App.—San Antonio 1998, no pet.). Because, in Texas, documents executed contemporaneously by the same parties are construed as a single, inextricable, contract, *see Richland Plantation Co. v. Justiss-Mears Oil Co.*, 671 F.2d 154, 156 (5th Cir. 1982), the Deed of Trust and the Assignment must be construed together, and not as separate and distinct agreements.

1. **Whether the Deed of Trust and the Assignment, when construed together, are ambiguous.**

Where language in a contract has a definite legal meaning, the contract is unambiguous and will be enforced as written. *Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 460 (Tex. App.—Dallas 2007, no pet.). However, where a contract has conflicting language or language that is susceptible to more than one reasonable interpretation, such language is ambiguous. *See Richland*, 671 F.2d at 156; *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000) (holding that for an ambiguity to exist, more than conflicting interpretations must exist;

such interpretations must both be reasonable). When a plain-language analysis fails to reveal the contract's meaning, the court may resort to the rules of contract construction, including the rule of *contra proferentum*, which provides that ambiguous language in a contract should be construed against the drafter. *Richland*, 671 F.2d at 156.

Additionally, in Texas, there is a strong presumption that parties to an assignment of rents intended a collateral assignment. *Int'l Prop.*, 929 F.2d at 1036. Indeed, to overcome this presumption, a party—here, the Lender—must show "especially clear evidence" that an absolute assignment was intended. *Id.* Four factors may indicate the intent of the parties with respect to such documents:

1. A statement of intent to assign absolutely rights, interests, estates, or rents to the mortgagee, typically a lender, and that the assignment was intended to be presently effective. *Int'l Prop.*, 959 F.2d at 1038; *801 Nolana, Inc. v. RTC Mortgage Trust 1994-S6*, 944 S.W.2d 751, 755 (Tex. App.—Corpus Christi 1997, reh'g denied).

2. A statement of obligation on the part of the mortgagor to collect and hold rent payments solely for the benefit of the mortgagee upon default. *Allen*, 357 B.R. at 111.

3. A clause eliminating any duty on the part of the mortgagee to institute legal action in order to assume control of the property or the rents therefrom. *Cadle*, 998 S.W.2d at 723.

4. A clause referencing the automatic transfer of rights, interests, estates, or rents upon a specified condition, normally a default. *Int'l Prop.*, 959 F.2d at 1035; *801 Nolana*, 944 S.W.2d at 754.

In this case, the Assignment and the Deed of Trust, taken together, demonstrate an ambiguity in the documents. Specifically, the Deed of Trust contemplates a collateral assignment of the Rents whereas the Assignment contemplates an absolute assignment of the Rents.

Section 2.1 of the Deed of Trust states that "to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Grantor . . .

9

does GRANT, BARGAIN, SELL and CONVEY, unto Trustee the Mortgaged Property," which includes "the Land, Building, Fixtures, Personalty, *Rents* and Contracts." [Finding of Fact No. 3] (emphasis added). Additionally, section 9.1 of the Deed of Trust provides that "[t]his Deed of Trust shall . . . serve as a 'Security Agreement' . . . and shall constitute . . . a first and prior security interest . . . with respect to the Personalty, Fixtures, Leases and *Rents*." [Finding of Fact No. 4] (emphasis added). Section 9.1 of the Deed of Trust also defines "the Personalty, Fixtures, Leases and *Rents*" as "the '*Collateral*'" and states that the Deed of Trust is intended "to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations." [Finding of Fact No. 4] (emphasis added).

A reasonable reading of such language indicates the intention of the parties was to create a security interest held by the Lender in the Rents. Specifically, the phrase "to secure" evidences a security agreement, and the explicit inclusion of the "Rents" in the definition of "Mortgaged Property" indicates a definite intent to create a security interests in the Rents.

Despite this language, the Assignment purports to make an absolute assignment of the Rents. Section 1.2 of the Assignment expressly states, "this Assignment provides for an absolute assignment of Rents, not a collateral assignment of Rents." [Finding of Fact No. 7.] Further, section 2.1 of the Assignment states that "this assignment is absolute, unconditional and immediately effective," and that "it shall never be necessary for Assignee to institute legal proceedings of any kind to enforce the provisions of this Assignment." [Finding of Fact No. 8.] Indeed, it appears as if the Assignment was meticulously crafted to overcome the strong presumption against absolute assignments in Texas by conforming to all four of the factors described above, which indicate that here, the parties to the Assignment specifically intended an absolute assignment of the Rents.

10

Thus, there is no question that the Deed of Trust and the Assignment, when read together, are patently ambiguous with respect to whether a collateral assignment or an absolute assignment of the Rents was intended. Because the plain language of the Documents is ambiguous, this Court may look to the rules of contract construction to resolve the ambiguity.

2. **_Contra Proferentum_**

The Restatement of Contracts suggests that construing a contract against the drafter is justified when the drafter is in a better position to know of uncertainties of meaning or when the drafting party has the stronger bargaining position. Restatement (Second) of Contracts § 206 com. a (1981). In _National Ropes_, the Fifth Circuit found that an ambiguity existed between two paragraphs of a security agreement between a bank (the assignee) and NDS (the assignor). _Nat'l Ropes, Inc. v. Nat'l Driving Serv., Inc._, 513 F.2d 53, 59 (5th Cir. 1975). The bank relied on one paragraph of the agreement to contend that it owned a security interest in all of the assignor's assets, including those physically possessed by the assignor. _Id._ The Fifth Circuit found the bank's contention plausible based on language which provided that the bank shall have a lien upon "all property of the undersigned of every name and nature whatsoever, delivered to the Bank for safekeeping or otherwise." _Id._ at 57. However, the agreement further provided that "any moneys or other property at any time in the possession of said Bank belonging to [assignor] . . . may . . . be held and treated as collateral security." _Id._ at 59. The Fifth Circuit concluded that this provision limited the bank's security interest to only the assets that were in the bank's possession, and thus was inconsistent with the other language of the agreement. _Id._

In refusing to adopt the interpretation provided by the bank, the Fifth Circuit reasoned that the "creation of a security interest in . . . a debtor is by no means an insignificant commercial transaction. Common sense suggests that parties to such an agreement would not make known

their intent with a single obscure and ambiguous phrase buried in a much larger document." *Id.* The ambiguity was construed against the bank because it was the drafter of the agreement. *Id.*

The Fifth Circuit's rationale in *National Ropes* may be applied in the instant case. The distinction between the assignment of goods and the assignment of rents is insignificant because there, as here, the dispute has nothing to do with the asset itself, but rather the contractual language which effectuates the assignment. Thus, *National Ropes'* reasoning is applicable in the case at bar.

Here, the Lender, an entity sophisticated in its financial dealings, has assuredly dealt with rental assignments. As the drafter of the Deed of Trust and the Assignment, the Lender was in the best position to be aware of ambiguities in the documents and the potential exposure such ambiguities might create.[2] Therefore, this Court concludes that, when construed against the Lender, the Deed of Trust and Assignment, when taken together, create a collateral assignment, resulting in the Debtor owning fee to the Rents and the Lender holding a security interest in the Rents.

### 3. The Rents are property of La Placita's bankruptcy estate pursuant to 11 U.S.C. § 541.

A debtor's "interests in the rents and profits earned by property in a bankrupt estate" are property of the estate, which the debtor may use to effectuate a successful reorganization. Section 541(a) of the Bankruptcy Code provides as follows:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:
> . . . .
> > (6) Proceeds, product, offspring, *rents*, or profits *of or from property of the estate* . . . .

---

[2] It is undisputed that the Lender drafted the Documents in the case at bar.

12

11 U.S.C. § 541(a) (emphasis added).  Section 541(a) makes no exception for rents that have been assigned—either collaterally, or absolutely—to a creditor.

In the case at bar, the shopping center owned by La Placita is certainly property of La Placita's Chapter 11 estate.  Thus, the Rents derived therefrom are derived "from property of the estate" in accordance with § 541(a)(6), which makes the Rents themselves "property of the estate" even if they had been absolutely assigned to the Lender.  However, § 541(a) does not leave the Lender high and dry.  The Bankruptcy Code strikes a delicate balance between preserving the value of a creditor's collateral and allowing a debtor-in-possession to use property to reorganize its business.  As the Bankruptcy Court for the District of Maryland has recognized,

> Debtor must have the rents to operate and to exercise the opportunity provided by Chapter 11 of the Bankruptcy Code to reorganize, and Lender is entitled to adequate protection for use of the rents for these purposes.  If adequate protection is provided, the Bankruptcy Code imposes delay on the exercise of state law rights in order to facilitate the goal of reorganization.

*In re Bethesda Air Rights Ltd. P'ship*, 117 B.R. 202, 210 (Bankr. D. Md. 1990).

Section 541(a)(6) thus enables debtors to use post-petition rents to increase the value of the estate, instead of simply applying them to pay creditors or turning them immediately over to assignees.  This structure comports with the twin goals of bankruptcy, which are (1) permitting the debtor to obtain a fresh start, and (2) ensuring that claims are paid.  *In re T-H New Orleans Ltd. P'ship*, 188 B.R. 799, 807 (E.D. La. 1995), *aff'd*, 116 F.3d 790 (5th Cir. 1997).

Even if § 541(a)(6) does not make the Rents property of the Debtor's bankruptcy estate, the fact that the Debtor retains possession of the Rents in the case at bar makes the Rents property of the estate pursuant to § 541(a)(1), which encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Indeed, the Fifth Circuit has recognized that an "absolute" assignment of rents may not be absolute at all:

> The concept of a present transfer of title to rents contingent upon default, as opposed to a security interest in the rents, is essentially a legal fiction . . . . Whatever terminology the court uses, . . . mortgagees employ such assignments to secure the debt, and all such assignments would be considered security interests under the Uniform Commercial Code, which treats all transfers intended to secure a debt as security interests despite their form.

*FDIC v. Int'l Prop. Mgmt., Inc.*, 929 F.2d 1033, 1035 (5th Cir. 1991); *see also In re Foundry of Barrington P'ship*, 129 B.R. 550, 557 (Bankr. N.D. Ill. 1991) ("[The lender] can call this arrangement an 'absolute assignment' or, more appropriately, 'Mickey Mouse.' It's still a lien . . . ."). The Fifth Circuit has also used the term "absolute" interchangeably with "contingent present assignments." *See id.* at 1035-36. The Fifth Circuit has distinguished collateral assignments from absolute assignments in the following manner:

> A contingent present assignment immediately transfers legal title to rents to the mortgagee but the mortgagor continues to enjoy the rents until the occurrence of a specified condition—usually default. Upon the occurrence of the specified condition, the mortgagee receives the right to enjoy the rents (in addition to the legal title he already possessed).

*Id.* at 1036 n.2 .

Based on this reasoning, an absolute assignment leaves the debtor with, at the very least, a possessory interest in the rents before an event of default. As the District Court for the Southern District of New York has reasoned,

> [T]he finding that the assignment was absolute does not necessarily compel the conclusion, as assumed by both parties, that the lender thereby holds more than a security interest in the rents or that Debtor retains no interest whatsoever in the rents. Herein lies the crucial issue on this appeal, which has not been directly addressed by the parties: many of the cases suggest that the distinction between absolute assignments and assignments as additional security is relevant only to the manner in which the *security interest* must be perfected by the creditor. They do not hold (with few exceptions) that the creditor thereby gains more than a security interest in the rental income.

*Travelers Indem. Co. v. Grant Assocs. (In re Grant Assocs.)*, No. M-47 (RJW), 1991 WL 21228, at *4 (S.D.N.Y. Feb. 5, 1991) (emphasis original). Thus, even if § 541(a)(6) does not place post-petition rents from estate property in the debtor's bankruptcy estate, the debtor nonetheless retains some minimal interest in the rents sufficient to make those rents "property of the estate" under § 541(a)(1), which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." This is especially true where, as here, the Debtor is still in possession of the Rents because bare possession, alone, constitutes one stick in the bundle of sticks that comprise property rights. *See, e.g., Severance v. Patterson*, 566 F.3d 490, 512 (5th Cir. 2009) (acknowledging that "physical possession" is one of the "crucial stick[s] from the bundle of property rights").

Additionally, an "absolute" assignment of rents that occurs in the context of a mortgage loan cannot possibly transfer fee title because such assignments terminate upon payment in full of the debt. *See, e.g., Lyons*, 193 B.R. at 648 ("The fact that the assignments are conditioned upon default and will terminate upon satisfaction of the debt indicates that they . . . are not an absolute transfer of the Debtors' interest in the rents to the Bank."); *In re Bethesda*, 117 B.R. at 207 ("The Assignment ends upon repayment of the loan. This trigger for termination of the assignment is identical to the trigger which would terminate and release a security interest. Absent a gift to the Borrower, which is not suggested, this is not a trigger one would expect to terminate absolute ownership."); *Foundry of Barrington P'ship*, 129 B.R. at 556-557 (The lender's interest "exists only to assure payment of the debt and performance of the other obligations of the Debtor. That is clear because the assignment terminates once the debt is paid."). Indeed, the Deed of Trust in the case at bar provides that the lien on the Rents will be released and that the Lender's rights under the Assignment will terminate once La Placita fulfills

its obligations to the Lender.[3] [Finding of Fact Nos. 3 & 4.] This interpretation comports with the Fifth Circuit's reasoning in *International Property*:

> FWG contends that the deed of trust, note, and assignment of rents clause, when construed together, indicate that the mortgagee included the assignment of rents clause in order to assure payment of the debt and to provide additional protection upon default. We agree. The provisions in the assignment of rents clause . . . that require the mortgagee to apply rental income to the debt (with any remainder going to the mortgagor) and that provide for termination of the assignment of rents on release of the deed of trust would be unnecessary were the clause not intended to assure payment of the debt.

*Int'l Prop.*, 929 F.2d at 1037-38.

In sum, § 541(a) brings the Rents into the bankruptcy estate, whether or not the Rents have been absolutely assigned to the Lender. Therefore, even if this Court had not construed the patent ambiguity in the Documents against the Lender, the Rents are still property of La Placita's bankruptcy estate pursuant to § 541(a)(6) and (1).

## V. CONCLUSION

This is a clear case of a lender attempting to "have its cake and eat it too." On the one hand, the Lender drafted the Deed of Trust to create a security interest in the Rents to secure payment of La Placita's loan obligations. On the other hand, the Lender drafted the Assignment, which was executed contemporaneously with the Deed of Trust, to effectuate a present transfer of any and all future Rents to the Lender. The Lender cannot have it both ways. Either the Rent is collateral for its loans, or all of the La Placita's interest in the Rents has been absolutely assigned to the Lender. As drafter of the Deed of Trust and the Assignment, the Lender must bear the risk that the Documents it drafted would be construed in the light least favorable to its

---

[3] Specifically, section 2.1 of the Deed of Trust provides that "if [La Placita] shall pay (or cause to be paid) the Indebtedness as and when the same shall become due and payable and shall perform and discharge (or cause to be performed and discharged) the Obligations on or before the date same are to be performed or discharged, then the liens, security interests, estates and rights granted by the Loan Documents [which expressly includes the Assignment] shall terminate."

interpretation. This Court's conclusion also comports with the strong presumption in Texas against construing a contract to create an absolute assignment of rents.

This Court finds that the Documents evidencing the transaction at hand may reasonably be read to be either a collateral assignment of the Rents or an absolute assignment of the Rents. This ambiguity compels the Court to apply the rule of *contra proferentum* and interpret the Documents against the Lender. Thus, this Court concludes that the Documents create a collateral assignment of the Rents.

Alternatively, the Rents are "property of the estate" as that term is defined in § 541(a). Section 541(a)(6) places all rents "from property of the estate" in La Placita's bankruptcy estate even if such rents have been absolutely assigned. Additionally, even if La Placita only retains a minimal interest in the Rents (i.e. its physical possession of the Rents), the Rents constitute property of the estate under the broad definition in § 541(a)(1). That the absolute assignment was made in the context of a loan militates in favor of this conclusion.

For the reasons set forth above, this Court concludes that the Rents constitute La Placita's cash collateral. An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed on this 22nd day of July, 2009

Jeff Bohm
United States Bankruptcy Judge