

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**09/17/2009**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **LAS TORRES DEVELOPMENT, L.L.C.,** | § | **Case No. 09-33872-H4-11** |
| | § | |
| **and** | § | |
| | § | **(Jointly Administered)** |
| **LA PLACITA SHOPPING CENTER, L.L.C.,** | § | |
| | § | |
| **Debtors.** | § | |

## MEMORANDUM OPINION ON DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL
[Docket No. 6]

### I. INTRODUCTION

The debtors in the above-referenced, jointly administered Chapter 11 cases request permission to use the cash collateral of one of the debtors—consisting solely of rental income—to pay both debtors' continuing obligations during the pendency of their respective bankruptcy cases pursuant to 11 U.S.C. § 363.[1]  A secured creditor has objected to their request on the grounds that its loan documents provide for an absolute assignment, rather than a collateral assignment, of the rents.  Based on this premise, the secured creditor contends that the rents are not property of the estate, and therefore this Court may not properly authorize the debtors to use the rents pursuant to § 363.  However, in a previous opinion in this case, this Court ruled that the rents are property of the

---

[1] Any reference herein to "the Code" refers to the United States Bankruptcy Code.  Further, reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code.  Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

estate and thus subject to be used as cash collateral pursuant to § 363. In the first footnote of that earlier opinion, this Court noted that "A corollary issue is whether, in two cases being jointly administered, cash collateral from one debtor's bankruptcy estate may be used to pay the expenses of the other debtor's estate. Specifically, may the attorney's fees of Las Torres be paid out of La Placita's cash collateral? The Court will address this issue in a separate memorandum opinion and order." *In re Las Torres Dev., LLC*, Nos. 09-33872-H4-11, 09-33885-H4-11, 2009 WL 2225806, at *1 n.1 (Bankr. S.D. Tex. July 22, 2009).

As promised in the above-referenced footnote, this Opinion now addresses the sole issue of whether, in these two jointly administered cases, cash collateral from one debtor's (La Placita's) bankruptcy estate may be used to pay the expenses of the other debtor's (Las Torres's) estate. Specifically, may the attorneys' fees—and the U.S. Trustee's fees—of Las Torres's estate be paid out of La Placita's cash collateral? For the reasons set forth below, this Court concludes that the administrative expenses of Las Torres's estate may not be paid out of the cash collateral generated from La Placita's estate. The Court makes these findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such. Moreover, to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such.

## II. FINDINGS OF FACT

1.      On June 1, 2009 (the Petition Date), La Placita Shopping Center, L.L.C. (La Placita) and its affiliated company, Las Torres Development, L.L.C. (Las Torres) (collectively, the Debtors), each filed voluntary Chapter 11 petitions, initiating Case Numbers 09-33872 and 09-33885, respectively. [Docket No. 1 & Case No. 09-33885 Docket No. 1.] Pursuant to §§ 1107(a)

2

and 1108, the Debtors continue to operate as debtors-in-possession.  No trustee or examiner has been appointed in these cases.

2.       On June 1, 2009, the Debtors filed an Expedited Motion for Order Directing Joint Administration of Cases requesting the Court to authorize joint administration of Case Number 09-33885 and Case Number 09-33872.  [Docket No. 7.]

3.       On June 8, 2009, the Court issued an Order Directing Joint Administration.   [Docket No. 20.]  In this Order Directing Joint Administration, the Court ordered that Case Number 09-33885 and Case Number 09-33872 "shall be jointly administered for procedural purposes only in accordance with Bankruptcy Rule 1015(b) under Case No. 09-33872. . . . and that the procedural consolidation shall be for administrative purposes only and shall not be a substantive consolidation of the respective estates."  [Docket No. 20, p. 2.]

4.       La Placita operates a shopping center (the Shopping Center), which generates approximately $47,000.00 per month in rent (the Rents).  [Debtors' Ex. 1.]  Prior to the Petition Date, La Placita executed two separate promissory notes with MetroBank, N.A. (the Lender): one in the original face amount of $2,900,000.00, and the other in the original face amount of $300,000.00.  Las Torres has also executed a promissory note with the Lender in the original face amount of $1,300,000.00.[2]  Contemporaneously with the promissory notes described above, La Placita and the Lender executed a "Deed of Trust and Security Agreement" (the Deed of Trust) [Lender's Ex. 3] and an "Absolute Assignment of Rents" (the Assignment) [Docket No. 18-1]; [Lender's Ex. 1] (collectively, the Documents).  The Deed of Trust and

---

[2] The Debtors made this allegation in their motion to use cash collateral, [Docket No. 6, ¶ 10], and the Lender admitted this allegation in its response and objection to that motion [Docket No. 18, ¶ 10].

the Assignment were admitted as Lender's Exhibits 1 and 3, respectively.

5.     As found in this Court's earlier opinion, La Placita owns fee title to the Rents, and the Lender holds a security interest in the Rents. *In re Las Torres Dev.*, 2009 WL 2225806, at *10. La Placita thus executed a collateral assignment—not an absolute assignment—under Texas law. *Id.*

6.     On June 1, 2009, the Debtors filed an Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral (the Motion) requesting an order from this Court authorizing the use of the cash collateral to pay expenses, including $15,000.00 in administrative expenses, in accordance with a monthly cash collateral budget. [Docket No. 6.]

7.     On June 5, 2009, the Lender filed a Response and Objection to the Motion (the Objection). [Docket No. 18.]

8.     On June 18, 2009, the Debtors filed a Reply to the Objection (the Reply). [Docket No. 42.]

9.     On June 19, 2009, the Lender filed a Response to the Reply (the Response). [Docket No. 44.]

10.    On June 8 and 23, 2009, the Court held a hearing on the Motion, the Objection, the Reply, and the Response. At the conclusion of the hearing, the Court took under advisement one key issue—whether the Rents are, in fact, cash collateral, or whether there has been an absolute assignment of the Rents to the Lender such that the Rents are not property of the estate and, therefore, not cash collateral. The Court continued the hearing until July 9, 2009.

11.    On July 9, 2009, the Court held a continued hearing at which time the Lender raised the

4

additional issue of whether the cash collateral of one debtor (La Placita) could be used to pay $15,000.00 per month in attorneys' fees incurred by both Debtors. [Tape recording, 07/09/09 at 2:12 p.m.] The Court also took this particular issue under advisement.

12.     Additionally, at the July 9, 2009 hearing, the Court admitted into the record Debtors' Exhibits 1, 5, and 6. Debtors' Exhibit 1 is entitled "Las Torres Development, LLC and La Placita Shopping Center LLC's Cash Collateral Budget" (the Cash Collateral Budget). [Debtors' Ex. 1.] The Cash Collateral Budget lists "Rental Income" of $47,000.00, [Debtors' Ex. 1], and this income is generated solely by La Placita; Las Torres generates no income with its undeveloped tract of land (the Undeveloped Tract). [Tape recording, 07/09/09 at 2:04 p.m.]

13.     The Cash Collateral Budget also lists the following categories and amounts of expenses: "Property Insurance" of $2,500.00; "Electric" of $2,000.00; "Water" of $1,500.00; "Office Repairs and Maintenance" of $2,000.00; "Supplies Expenses" of $500.00; "Bank Charges" of $100.00; and "Administrative Expenses (including UST fees and Professional Fees)" of $15,000.00. [Debtors' Ex. 1.] Las Torres has no operating expenses. [Tape recording, 07/09/09 at 1:55 p.m.] The Lender has agreed to use of its cash collateral to pay all of these expenses except the $15,000.00 in administrative expenses. [Tape recording, 07/09/09 at 2:02 p.m.] At this hearing, the Court heard testimony from Gilberto Ramirez (Ramirez), the manager and 98% owner of both Debtors.[3] Ramirez testified that the $15,000.00 on the Cash Collateral Budget includes $2,400.00 in U.S. Trustee fees (i.e. $1,200.00 per debtor) and

---

[3] The remaining 2% of the Debtors is owned by a partnership in which Ramirez is the general partner.

$12,600.00 in attorneys' fees.[4] [Tape recording, 07/09/09 at 2:04 p.m.] At the close of the hearing, the Court ruled that the Debtors may use the cash collateral for the operating expenses set forth in the Cash Collateral Budget with one exception: the Debtors may not use La Placita's cash collateral to pay the Administrative Expenses of $15,000.00, which necessarily includes expenses incurred by both Debtors pending a ruling from this Court as to whether any cash collateral may be used to pay any or all of the administrative expenses. [Tape recording, 07/09/09 at 2:13 p.m.]

14.     Finally, the Cash Collateral Budget lists $23,400.00 in "Net Income" or "Debt Service." [Debtors' Ex. 1.] Ramirez testified that this $23,400.00 is the amount the Debtors propose to pay the Lender as a monthly adequate protection payment. [Tape recording, 07/09/09 at 1:58 p.m.] Regarding the issue of adequate protection, the Debtors' counsel contended during closing argument that "the [Lender], through replacement liens granted in the Rents . . . is well adequately protected." [Tape recording, 07/09/09 at 2:10 p.m.]

15.     At the hearing held on July 9, 2009, the Debtors' consultant, Lawrence J. Trevino (Trevino), a CPA, testified that La Placita owes the Lender approximately $4,158,000.00 and that Las Torres owes the Lender approximately $3,302,000.00. [Tape recording, 07/09/09 at 1:10 p.m.] Regarding the Debtors' properties pledged to the Lender as collateral, Ramirez testified that the value of the Shopping Center is approximately $7.0 million and that the value of the Undeveloped Tract is approximately $6.0 million. [Tape recording, 07/09/09 at 1:32 p.m., 1:35 p.m.] La Placita's Schedule A lists $8.0 million as the value of the

---

[4] The $12,600.00 in attorneys' fees is not allocated between the fees for La Placita's estate and the fees for Las Torres's estate. Rather, this figure is simply an aggregate amount.

Shopping Center. [Docket No. 38]; [Debtors' Ex. 6, p. 3]. Las Torres' Schedule A lists $4.7 million as the value of the Undeveloped Tract. [Docket No. 26]; [Debtors' Ex. 5, p. 3]. At this hearing, Ramirez testified that both Debtors are delinquent in property tax payments. [Tape recording, 07/09/09 at 1:46 p.m., 1:48 p.m.] Specifically, the amount of delinquent taxes owed on the Shopping Center is $136,254.31, and the amount of delinquent taxes owed on the Undeveloped Tract is $39,320.46.[5]

16.    On July 22, 2009, the Court issued a memorandum opinion holding that with respect to the Rents, La Placita granted a collateral assignment, not an absolute assignment, to the Lender. [Docket No. 55]; *In re Las Torres Dev.*, 2009 WL 2225806, at *10. In that opinion, the Court noted that it would issue a separate memorandum opinion to address the issue of whether La Placita's cash collateral may be used to pay Las Torres's administrative expenses. The Court now addresses this remaining issue.

### III. CREDIBILITY OF WITNESSES

The Court heard testimony from Trevino, the Debtors' consultant and a CPA by trade, and from Ramirez, the manager and 98% owner of the Debtors. This Court believes each witness testified to the best of his knowledge and finds their testimony credible on all points.

### IV. CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and

---

[5] These figures come from the respective Schedules E filed in each of the Debtors' cases. At the hearing on July 9, 2009, Ramirez testified that the past due taxes on the Shopping Center were approximately $120,000.00. [Tape recording, 07/09/09 at 1:48 p.m.] He gave no testimony about the past due taxes on the Undeveloped Tract. For purposes of this Memorandum Opinion, the Court accepts the figures set forth in the Schedules.

157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), (M), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.     Use of One Debtor's Cash Collateral to Pay Administrative Expenses of Both Debtors in a Jointly Administered Chapter 11 Case**

According to this Court's prior memorandum opinion in this case, La Placita owns fee title to the Rents and the Lender holds a security interest in the Rents. [Finding of Fact No. 5.] The Rents constitute the Lender's cash collateral. [Finding of Fact No. 5.] The Lender argues that this cash collateral should not be used to pay the administrative expenses of either of the Debtors. More specifically, the Lender argues that, even if it holds a collateral assignment of the Rents as opposed to an absolute assignment of the Rents, the Rents generated from La Placita's property, because they constitute the Lender's cash collateral, should not be used to pay administrative expenses of La Placita's estate or Las Torres's estate. For the reasons explained herein, the Court agrees that the cash collateral of La Placita's estate should not be used to pay the administrative expenses of Las Torres's estate; however, the Court disagrees with the Lender and believes that La Placita's cash collateral may be used to pay the reasonable and necessary administrative expenses of La Placita's estate. [Finding of Fact No. 11.] This Court agrees with the Lender.

8

### 1.   Distinguishing Joint Administration from Substantive Consolidation

The two Chapter 11 cases referenced above are jointly administered, not substantively consolidated. [Finding of Fact No. 3.] Indeed, this Court's Order Directing Joint Administration states that these two cases "shall be jointly administered for procedural purposes only" and "that the procedural consolidation shall be for administrative purposes only and shall not be a substantive consolidation of the respective estates." [Finding of Fact No. 3.] The issue before the Court hinges on the fact that these cases are jointly administered rather than substantively consolidated.

Substantive consolidation is a mechanism for administering the bankruptcy estates of multiple, related entities. *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 327 n.6 (5th Cir. 2007); *Clyde Bergemann, Inc. v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)*, 250 F.3d 955, 958 (5th Cir. 2001). "[S]ubstantive consolidation . . . 'usually results in, *inter alia*, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans.'" *In re Babcock & Wilcox Co.*, 250 F.3d at 958 n.5 (quoting *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988)). Essentially, substantive consolidation entails combining the assets and liabilities of separate and distinct entities into a single pool and treating those assets and liabilities as if they belong to one entity. *Id.* However, substantive consolidation in bankruptcy is "an extreme and unusual remedy." *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 499 (5th Cir. 2002).

By contrast, joint administration or administrative consolidation is merely a procedural device which enables a court to efficiently oversee multiple estates. *In re Babcock*, 250 F.3d at 958

9

n.6. In the two pending Chapter 11 cases, the Court issued an Order Directing Joint Administration

pursuant to Rule 1015(b). [Finding of Fact No. 3.] Rule 1015(b) provides:

> If a joint petition or two or more petitions are pending in the same court by or against
> . . . a debtor and an affiliate, the court may order a joint administration of the estates.
> Prior to entering an order the court shall give consideration to protecting creditors of
> different estates against potential conflicts of interest.

Fed. R. Bankr. P. 1015(b). "Joint administration is designed in large part to promote procedural

convenience and cost efficiencies which do not affect the substantive rights of claimants or the

respective debtor estates." *In re McKenzie Energy Corp.*, 228 B.R. 854, 874 (Bankr. S.D. Tex.

1998) (citing *Unsecured Creditors Comm. v. Leavitt Structural Tubing Co.*, 55 B.R. 710, 712 (N.D.

Ill. 1985), *aff'd*, 796 F.2d 477 (7th Cir.1986)).

Whether cases are jointly administered or substantively consolidated makes a significant

difference.  Given that the Debtors' cases are jointly administered, as opposed to substantively

consolidated, the Debtors' assets and liabilities are *not* combined. Therefore, this Court is concerned

about the proposed use of the Rents—which belong solely to La Placita's estate and are the Lender's

cash collateral—to pay administrative expenses of the separate estates of both Debtors instead of just

La Placita's estate.

### 2.     The Use of Cash Collateral Generated from La Placita's Estate

The Debtors propose to use the cash collateral to pay the $15,000.00 per month

administrative fees incurred by both Debtors, not just La Placita. [Finding of Fact No. 6.]  The

Lender opposes this request by making these two arguments: (1) the cash collateral may not be used

by the debtor who holds title to the cash collateral—i.e., La Placita—unless the Lender consents or

this Court gives its approval. The Lender has expressly stated that it does not approve of any use of

any cash collateral to pay monthly administrative expenses of $15,000.00. Accordingly, the Lender argues, this Court must approve any use of cash collateral and should not do so unless the proposed expenses to be paid through such use are reasonable and necessary. Here, the Lender contends that the proposed aggregate expenses of $15,000.00 for both estates is unreasonable; and (2) even if this Court approves any use of cash collateral for payment of administrative expenses, it should only approve such use of cash collateral for administrative expenses in La Placita's case because that is the only debtor generating cash collateral. Stated differently, the Lender contends that whatever portion of the $15,000.00 is allocated to pay expenses of Las Torres's estate is *per se* unreasonable.

     **a.**    **In this case, because the Lender objects to the Debtors' use of cash collateral, this Court must authorize such use.**

Section 363(a) defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest," including "rents . . . or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest." 11 U.S.C. § 363(a).

As this Court previously concluded in *In re Las Torres Dev.*, the Rents are property of La Placita's estate under § 541(a)(1) and (6). *In re Las Torres Dev.*, 2009 WL 2225806, at *10. Because this Court has concluded that the Rents are property of La Placita's estate, La Placita may use this cash collateral if either the Lender consents or this Court approves such use over the Lender's objection. *Id.* Indeed, at the conclusion of the July 9, 2009 hearing, the Court authorized the Debtors to use the cash collateral for the Debtors' operating expenses set forth in the Cash Collateral Budget because the Bank stipulated that it had no objection to such usage of this cash

collateral (as these expenses related to the operation of the Shopping Center wholly owned by La Placita). [Finding of Fact No. 13.] However, at the same hearing, the Lender specifically objected to the use of the cash collateral to pay the administrative expenses of both Debtors. [Finding of Fact No. 13.] Thus, the only way that the Debtors could use the cash collateral for their respective administrative expenses is if this Court approves such use over the Lender's objection. *See* 11 U.S.C. § 363(c)(2)(B) (allowing the use of cash collateral if "the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section").

Generally, cash collateral may be used to pay administrative expenses, including professional fees incurred by a debtor.[6] *See Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 153 F.3d 61, 67-68 (2d Cir. 1998). Under § 363(c)(2):

> The trustee [or the debtor-in-possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
> >    (A) each entity that has an interest in such cash collateral consents; or
> >    (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). Section 363(c)(2)(A) does not apply here because the Lender has not consented to the use of its cash collateral to pay the Debtors' administrative expenses. [Finding of Fact No. 13.] Therefore, for the Debtors to use the Lender's cash collateral, this Court must authorize such use under § 363(c)(2)(B). "If a debtor seeks authorization to use cash collateral from

---

[6] The Court notes that the use of cash collateral to pay professionals is commonly referred to as a "carve out" which is often incorporated into a cash collateral order agreed to by the debtor and the secured lender. *See In re Lil' Things, Inc.*, 243 B.R. 278, 280 (N.D. Tex. 2000) (referencing the bankruptcy court's order that acknowledged that carve outs for attorneys' fees are "a normal and enforceable provision in a cash collateral stipulation"); *In re White Glove, Inc.*, Nos. 98-12493DWS, 98-12494DWS, 1998 WL 731611, at *6 (Bankr. E.D. Pa. Oct. 14, 1998) ("The term 'carve out' is one of those uniquely bankruptcy phrases . . . that appears nowhere in the bankruptcy statute but connotes definite meaning to parties. It is an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out of its lien position."). No such carve out agreement exists in the case at bar, as the Lender strongly opposes the use of its cash collateral to pay the administrative expenses of both La Placita's estate and Las Torres's estate.

the bankruptcy court under § 363(c)(2)(B), rather than seeking consent of a secured creditor under

§ 363(c)(2)(A), the bankruptcy court 'shall prohibit or condition such use, sale, or lease as is

necessary to provide adequate protection' for the secured creditor's interest." *In re Blackwood*

*Assocs.*, 153 F.3d at 67 (citing 11 U.S.C. § 363(e)).

> **b.     The Lender is adequately protected.**

As noted above, in order for this Court to authorize the use of cash collateral, the Lender

must be adequately protected. *See* 11 U.S.C. §§ 361 & 363; *In re Amaravathi Ltd. P'ship*, No. 09-

32754, 2009 WL 2432315, at *5 (Bankr. S.D. Tex. Aug. 3, 2009) ("Section 363 mandates that a

trustee or a debtor-in-possession provide adequate protection before the rents can be utilized by the

estate."). The parties requesting court approval to use cash collateral over the secured creditor's

objection must prove there is adequate protection for that creditor. 11 U.S.C. § 363(p)(1); *In re*

*Carbone Cos., Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008). Section 361 provides a

nonexclusive list of three examples of adequate protection:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such
> entity, to the extent that the stay under section 362 of this title, use, sale, or lease
> under section 363 of this title, or any grant of a lien under section 364 of this title
> results in a decrease in the value of such entity's interest in such property;
> (2) providing to such entity an additional or replacement lien to the extent that such
> stay, use, sale, lease, or grant results in a decrease in the value of such entity's
> interest in such property; or
> (3) granting such other relief, other than entitling such entity to compensation
> allowable under section 503(b)(1) of this title as an administrative expense, as will
> result in the realization by such entity of the indubitable equivalent of such entity's
> interest in such property.

11 U.S.C. § 361.

With respect to § 361(1), the Debtors have proposed to pay the Lender a lump sum in the

amount of $23,400.00 each month as listed on the Cash Collateral Budget as the line item "Debt

13

Service." [Finding of Fact No. 14.] The $23,400.00 represents the Debtors' Net Income each month (i.e., $47,000.00 in Rental Income minus $8,600.00 in operating expenses and $15,000.00 in Administrative Expenses). [Finding of Fact No. 14.]

According to § 361(1), such a payment is to compensate the Lender for the depreciation on the pledged collateral—here, the Shopping Center.[7] However, this Court has no evidence in the record regarding the amount of monthly depreciation on the Shopping Center. Therefore, this Court does not have the evidence necessary to determine whether the proposed payment of $23,400.00 adequately protects the Lender. Accordingly, this Court does not have a sufficient record to conclude that the Lender is adequately protected under § 361(1).

Similarly, the Debtors have failed to develop a record sufficient to show that the Lender is adequately protected under § 361(2). If the record showed that the Debtors had offered other property on which the Lender could take an additional or replacement lien, then § 361(2) might well apply. During closing argument, the Debtors' counsel argued that "the [Lender], through replacement liens granted in the Rents . . . is well adequately protected." [Finding of Fact No. 14.] Although counsel for the Debtors used the term "replacement lien" found in § 361(2), there is no evidence in the record for this Court to conclude that such a lien on the Rents sufficiently protects the Lender. For example, there was no testimony about how financially sound the tenants are, what the terms are for each lease, what the specific amount of each tenant's deposit is, and whether all tenants are current with their lease payments. Moreover, it is disingenuous to argue that the Debtors can grant replacement liens to the Lender on post-petition rents being generated by the Shopping

---

[7] The Lender also has a lien on the Undeveloped Tract, but because this property is not yet developed, but rather simply raw land, no depreciation is occurring.

14

Center because the Lender already has a lien on the Rents. 11 U.S.C. § 552(b)(2); 5 Collier on

Bankruptcy ¶ 552.03[1] (Matthew Bender 15th ed. Rev.) ("Subsection (b)(2) states that a prepetition

security interest extends to after-acquired rents . . . 'to the extent' provided in the security

agreement."); *In re De Cespedes*, 241 B.R. 260 (Bankr. S.D. Fla. 1999) (holding that a lender has

a lien on post-petition rents so long as it holds a mortgage containing a valid assignment of rents).[8]

Therefore, a replacement lien may not be granted on the Rents. *See In re Goode*, 235 B.R. 584, 589

(Bankr. E.D. Tex. 1999) (noting that the debtors could not offer any additional or replacement liens

to the lender because the lender already had a valid and existing lien on all of the debtor's assets).

Accordingly, based upon the existing record, the Debtors have failed to establish that the Lender is

adequately protected pursuant to § 361(2).

Next, under § 361(3), a debtor may provide adequate protection to a lender in the form of the

"indubitable equivalent" of the lender's interest in its collateral. *See* 11 U.S.C. § 361(3). The Code

does not define "indubitable equivalent," but the term originated in Judge Learned Hand's opinion,

*In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935). *Perez v. Peake*, 373 B.R. 468, 483 (S.D.

Tex. 2007). "The indubitable equivalent language is intended to follow the strict approach taken by

Judge Learned Hand in *In re Murel Holding Corp.*" S. Rep. No. 989 at 127 (1978), 1978

U.S.C.C.A.N. 5913. Legislative history states that indubitable equivalent:

> gives the parties and the courts flexibility by allowing such other relief as will result
> in the realization by the protected entity of the value of its interest in the property
> involved. Under this provision, the courts will be able to adapt to new methods of
> financing and to formulate protection that is appropriate to the circumstances of the
> case if none of the other methods would accomplish the desired result.

---

[8] There is no question that the Deed of Trust and Security Agreement [Lender's Ex. 3] grants to the Lender an assignment of rents from the Shopping Center.

H.R. Rep. No. 95-595, at 340 (1977) reprinted in 1978 U.S.C.C.A.N. 5963, 6296.

Providing adequate protection through § 361(3) would require, for example, the Debtors to grant to the Lender a lien on some alternative asset of equal or greater value than the amount of cash collateral to be used in the future. 3 Collier on Bankruptcy ¶ 361.03[4] (Matthew Bender 15th ed. Rev.) (discussing the meaning of "indubitable equivalent" and noting that a "debtor in possession may substitute tangible collateral for cash collateral."). Here, the Debtors have neither offered to substitute any tangible collateral for the Lender's cash collateral nor offered to provide the Lender with the indubitable equivalent of the cash collateral to be used.

Although the Debtors have not provided the Lender with adequate protection under the three enumerated examples set forth in § 361, the Court concludes that the Lender is nevertheless adequately protected because § 361 is not limiting. The Fifth Circuit has aptly noted that the Code contains no specific, definitive definition of adequate protection. *In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987). The Fifth Circuit has stated, however, that "'in determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's "equity cushion"—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims.'" *Mendoza v. Temple-Inland Mortgage Corp. (Matter of Mendoza)*, 111 F.3d 1264, 1272 (5th Cir. 1997) (quoting *In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995)).

Given the sufficient equity cushion in this case, the Court concludes it may authorize the Debtors to use the Lender's cash collateral to pay certain administrative expenses. The record here reflects that there is more than a 20% equity cushion in the Shopping Center; and case law is clear that an equity cushion of 20% or more constitutes adequate protection. *Mendoza*, 111 F.3d at 1272

(quoting *In re Kost*, 102 B.R. 829, 831 (Bankr. D. Wyo. 1989))[9]; *In re Knight Energy Corp.*, Nos.

09-32163, 09-32165, 2009 WL 1851739, at *3 (Bankr. N.D. Tex. June 26, 2009) (applying the 20%

equity cushion test to determine whether the secured lender was adequately protected).

Here, La Placita owes the Lender $4,158,000.00 and has pledged collateral (i.e., the Shopping

Center) valued at approximately $7.0 million to $8.0 million. [Finding of Fact No. 15.] Las Torres

owes the Lender $3,302,000.00 and has pledged collateral (i.e., the Undeveloped Tract) valued

between $4.7 million and $6.0 million. [Finding of Fact No. 15.] Using the conservative valuations

of $7.0 million for the Shopping Center and $4.7 million for the Undeveloped Tract, the equity

cushion for each is 40.6%[10] and 29.7%[11], respectively. Thus, because the equity cushion percentages

are greater than 20%, the Court concludes that there is sufficient equity in the value of the property

pledged as collateral that the Lender is adequately protected by this equity cushion.

---

[9] The Fifth Circuit also noted in a footnote in *Mendoza* that:
   While the amount of equity in the property is the primary factor that courts look to in an adequate
   protection analysis, other factors include the following: the value of the collateral . . . the likelihood
   that the collateral will depreciate or appreciate over time, whether insurance coverage is inadequate,
   whether property taxes are being paid, and the prospects for successful reorganization of the debtor's
   affairs.
*Mendoza*, 111 F.3d at 1272 (citing *In re Briggs Transp. Co.*, 780 F.2d 1339, 1349 (8th Cir. 1985); *In re Aqua Assoc.*,
123 B.R. 192, 196–97 (Bankr. E.D. Pa. 1991)). Given the insufficient record in the case at bar regarding depreciation,
insurance coverage, and prospects for a successful reorganization, the Court chooses to focus primarily on the equity
cushion analysis. With respect to whether property taxes are being paid, the Court notes that the Lender has raised
adequate protection concerns given Ramirez's testimony that both Debtors are delinquent in property tax payments.
[Finding of Fact No. 15.] However, there is substantial equity in the Lender's collateral that this Court gives much less
weight to the amount of the delinquent taxes than would otherwise be the case if the equity cushion was slimmer.

[10] This percentage is calculated as follows: 1 minus (4.158/7.0), equals .406, or 40.6%. Stated differently,
$7,000,000.00 minus $4,158,000.00 equals $2,842,000.00. $2,842,000.00 divided by $7,000,000.00 equals .406, or
40.6%.

[11] This percentage is calculated as follows: 1 minus (3.302/4.7), equals .297, or 29.7%. Stated differently,
$4,700,000.00 minus $3,302,000.00 equals $1,398,000.00. $1,398,000.00 divided by $4,700,000.00 equals .297, or
29.7%.

      **c.**      **Because the Lender is adequately protected, the Court will authorize La Placita to use the Rents to pay for the administrative expenses of La Placita's estate.**

Section 363(p) sets forth that the Debtors have the burden of proof to show that the Lender is adequately protected. *See* 11 U.S.C. § 363(p). With respect to La Placita, this Court has held that the Lender is adequately protected by the equity cushion in the Shopping Center. Section 363(c)(2) sets forth that La Placita may use cash collateral if the Lender consents or this Court authorizes such use. *See* 11 U.S.C. § 363(c)(2). Here, the Lender has made it clear that it does not consent. However, because the Debtors have met their burden of proof in establishing that the Lender is adequately protected in La Placita's case, this Court will authorize the use of cash collateral by La Placita for the reasonable and necessary administrative expenses incurred by La Placita's estate.

      **d.**      **Even though the La Placita case and the Las Torres case are being jointly administered, and even though the Lender is adequately protected, the cash collateral generated in La Placita's estate may not be used to pay administrative expenses of Las Torres's estate.**

Las Torres's estate generates no cash collateral, as its sole asset is the Undeveloped Tract. The Debtors therefore want to use cash collateral from La Placita's estate to pay the administrative expenses of Las Torres's estate. This, the Court will not allow, despite the fact that the Lender is adequately protected. The administrative expenses of one jointly administered debtor should not be paid out of the other jointly administered debtor's cash collateral because joint administration does "not affect the substantive rights of claimants or the respective debtor estates." *In re McKenzie Energy Corp.*, 228 B.R. at 874. Administrative expenses incurred in each jointly administered debtor's bankruptcy estate are not treated as a joint debt.

For example, in *In re Eads*, the bankruptcy court ordered the administrative consolidation, not substantive consolidation, of a husband and wife's bankruptcy cases. *In re Eads*, 307 B.R. 219, 224 n.5 (Bankr. W.D. Wash. 2004). Although *Eads* concerns jointly administered bankruptcy cases of a husband and wife, *Eads* is on point and provides guidance on the issue in the case at bar. In *Eads*, a husband and wife filed separate Chapter 7 petitions initiating two bankruptcy cases. *Id.* at 221–22. The same Chapter 7 trustee represented the bankruptcy estates in both cases. *Id.* at 220. Although the Chapter 7 trustee's attorneys' fees were administrative claims, the court concluded that "an administrative expense claim, however, is not a joint debt." *Id.* at 224. The court then held that "although the cases have been administratively consolidated, [the attorneys'] fees are assessable against each bankruptcy estate individually. . . . The mere fact that the majority of fees were incurred in the administration of a common asset in two different bankruptcy proceedings is simply insufficient to create a joint debt." *Id.* (footnote omitted).

Here, the Debtors' respective Chapter 11 cases are not substantively consolidated [Finding of Fact No. 3]; yet, the $15,000.00 listed as Administrative Expenses on the Cash Collateral Budget is not allocated for each Debtor. [Finding of Fact No. 13.] Although the same attorneys represent both Debtors, the Court concludes that the attorneys' fees must be allocated to reflect the compensation requested for services rendered to each Debtor. Professional services rendered to one debtor (i.e., Las Torres) in a jointly administered Chapter 11 case may not be paid using the assets of the other joint debtor's (i.e., La Placita's) estate because when cases are jointly administered, as opposed to substantively consolidated, the assets of each joint debtor are property of separate

19

bankruptcy estates and each estate also has different liabilities.[12]  *See In re McKenzie Energy Corp.*, 228 B.R. at 874; *In re Eads*, 307 B.R. at 224.  Had these two cases been substantively consolidated, then both the assets of and claims against the respective estates of each Debtor would have been pooled and the resultant common funds could have been used to satisfy the liabilities of both estates. *See In re Babcock & Wilcox Co.*, 250 F.3d at 958 n.5.

La Placita, not Las Torres, generates the Rents, and the Rents are the property of La Placita's estate, as this Court determined in a previous memorandum opinion.  *In re Las Torres Dev.*, 2009 WL 2225806, at *10.  Therefore, the Court concludes that the Rental Income of $47,000.00 listed on the Cash Collateral Budget—i.e., the Rents—should be used to pay only that portion of the $15,000.00 in administrative expenses incurred by La Placita, not Las Torres.  For the same reasons, the $1,200.00 in U.S. Trustee fees that Las Torres owes should not be paid using La Placita's cash collateral.  By merely listing Administrative Expenses of $15,000.00 without explaining what portion represents charges for services rendered to Las Torres's estate versus La Placita's estate, the Court is unable to ascertain what portion of the $15,000.00 of administrative expenses La Placita's cash collateral should be used to pay such expenses.

### 3.    Amending the Cash Collateral Budget

If the Debtors amend the Cash Collateral Budget to reflect which portions of the $15,000.00 represent charges for services rendered on behalf of each Debtor's separate estate, then the Court will be able to determine whether, and to what extent, it should authorize the use of cash collateral from

---

[12] Indeed, some of the creditors of La Placita's estate differ from the creditors of Las Torres's estate.  For example, La Placita's general unsecured creditors include, among others, Cananwill Inc., Centerpoint Energy, City of Houston, First Choice, GRG Commercial, and US Energy Savings Corp [Debtors' Ex. 6, pp. 10–12, Schedules E & F], and these six entities (none of whom are creditors of Las Torres) hold claims aggregating $12,945.27.  Conversely, Las Torres has two general unsecured creditors—Colorado Realty, Inc. and Las Alamedas Development, LLC—who are not creditors in La Placita's case and who hold aggregate claims of $34,764.83.  [Debtors' Ex. 5, Schedule F.]

La Placita's estate to pay the administrative expenses incurred by La Placita's estate.  Therefore, if the Debtors file an amended cash collateral budget itemizing the administrative expenses, this Court will set a hearing to allow La Placita the opportunity to prove how much of the $15,000.00 represents reasonable and necessary administrative expenses for La Placita's estate.  Without the itemized information, this Court will not authorize the use of cash collateral.

### V. CONCLUSION

The proposed use of cash collateral from one estate to pay the claims of another estate—in effect, borrowing from Peter to pay Paul—is not allowed under the applicable law.  Therefore, this Court will not authorize the use of La Placita's cash collateral to pay the administrative expenses of Las Torres's estate.  Any administrative expenses incurred by Las Torres's estate must be paid by assets of Las Torres's estate.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 17th day of September, 2009.

Jeff Bohm
United States Bankruptcy Judge